**Ann ARKIN and Richard Arkin, her husband, Appellants,**

v.

**TRANS INTERNATIONAL AIRLINES, INC., et al., Appellees.**

No. 719, Docket 86–7907.

United States Court of Appeals,
Second Circuit.

Argued Jan. 28, 1987.

Decided March 24, 1987.

See also, 568 F.Supp. 11.

Edward S. Rudofsky, New York City (Zane & Rudofsky, James B. Zane, Mitchell G. Mandell, David Sutton, of counsel), for appellants.

Charles K. O'Neill, New York City (Chabourne & Parke, James C. La Forge, of counsel), for appellees.

Before OAKES, MESKILL and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

Ann and Richard Arkin appeal from a summary judgment granted to a charter airline on their claim that they suffered various physical and emotional injuries as a result of inadequate services and information during an overnight delay in the departure of an international flight. The flight delay was caused by a hydraulic system failure which necessitated extensive repair, and the delay was exacerbated by the fact that when the plane finally did take off for Lisbon, Portugal, from John F. Kennedy Airport (JFK) in New York, a tire blew on takeoff, forcing the plane to return to JFK. A flight by a regularly scheduled airline was eventually arranged for the people taking the charter. The Arkins, passengers on the ill-fated charter, sued both the tour operator/charterer and the charter airline. There being no factual dispute, the United States District Court for the Eastern District of New York, Mark A. Costantino, Judge, granted summary judgment for the charter airline in accordance with the principles of *Celotex Corp. v. Catrett*, — U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), and *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11–12 (2d Cir.1986). This case is here on a Fed.R.Civ.P. 54(b) order. We affirm.

We note preliminarily that plaintiffs have not appealed the district court's rulings that the tire failure was an "accident" within the meaning of Article 17 of the Warsaw Convention, *reprinted in* 49 U.S.C. app. § 1502 note (1982), and, therefore, that plaintiffs' claims in respect to injuries allegedly suffered as a result of the failure are time-barred. Accordingly, this appeal relates solely to the pre-embarkation time period, in respect to which the district court, while denying summary judgment to the tour operator, International Weekends Charter Tours, Inc. (Weekends), nevertheless granted summary judgment to the charter airline, Trans International Airlines, Inc. (Transamerica), on the basis that it did not breach any duty owing

to plaintiffs during the pre-flight waiting period.

Weekends, the tour operator, chartered an aircraft from Transamerica for a New York-Lisbon tour. The terms of the charter, dated April 18, 1979, provided that Transamerica was only to provide air transportation services, specifically excluding "ground transportation, accommodations or services prior to the scheduled departure or subsequent to arrival at destination." The flight between JFK and Lisbon was scheduled to depart at 11:59 p.m. on May 2, 1979, and the cost of the tour was $299 plus tax, including hotel reservations and air transportation. On the night of the scheduled departure, the Arkins, along with another couple, arrived at JFK's International Terminal between 9:00 and 9:30 p.m. They checked their baggage, went to a desk in the departure gate area staffed by Weekends representatives, and were informed that their flight was delayed due to mechanical difficulties and would not be leaving until 4:00 or 4:30 a.m. Richard Arkin remembered that they told him—accurately, it turns out—that there was something wrong with the hydraulic system or a tire, he did not remember which. Mr. Arkin then asked the Weekends representatives if they could send the Arkins and their friends someplace to have dinner and rest. The Weekends representatives said they could not provide anything, but that the Arkins were free to leave and should return to the terminal by 2:30 a.m. The Arkins and the other couple took a taxi to the nearby Skyway Motel where they had some food and alcoholic beverages, Mrs. Arkin having, as she recalls it, an Italian veal dish. They rented a room with two beds, and at least Mr. Arkin lay down and napped. They returned to the airport at about 2:30 a.m. only to be told that there would be a further delay because a part was being flown in and there would have to be an inspection after the part arrived and was installed. Mr. Arkin and others spoke again with the Weekends representatives concerning the delay and were told to stay in the area because there was no way of knowing when the aircraft would be ready to depart.

The area where the group waited was a large open space with seats, and appellants either sat, lay down (at the Air France Concorde lounge), or walked around until they ultimately boarded the Transamerica aircraft for departure between noon and 1:00 p.m. on Thursday, May 3. During this time, Mrs. Arkin, who thought she was suffering from indigestion but may have been experiencing some angina pains, obtained some stomach medicine when the concourse stores opened in the morning.

At some point between 6:00 and 8:00 a.m. on Thursday morning, the Weekends representatives left the area. Later in the morning some Transamerica representatives arrived and answered questions regarding the delay, the expected departure time, and the possibility of a refund. There is no question but that the Transamerica representatives gave appropriate and truthful information. The Arkins testified by deposition that no Transamerica employee acted discourteously, used vulgarity, or was in any way abusive. Although appellants claim that Transamerica failed to provide medical services and Ann Arkin testified that several times between 4:30 a.m. until boarding at midday she experienced pain and tightness in her chest, she did not seek any medical attention, nor did she do so when medical assistance was offered after the plane was forced to return to JFK. In fact, she testified that she told no one other than her husband about her chest pains.

Thus, although appellants' brief talks much of Transamerica's "abject neglect and abandonment of the passengers," and "the injury inherent in travel delay and the complete deprivation of information to the Arkins," the claims made against the charter airline really boil down to its failure to provide adequate information, medical services, and a place to rest or eat. Contrary to the Arkins' claims, however, accurate information was in fact provided, though not directly by Transamerica, according to the Arkins' own testimony. And as to the claimed lack of medical services, Mrs. Arkin herself did not seek such services, nor did her husband. Finally, the claim of lack of food and a place to rest is unsupported

by the record. The Arkins spent at least four hours of the delay in a motel restaurant and room and also spent time in the Concorde area of the Air France lounge or in the adjacent large waiting room—"a big open space with seats around," according to Mrs. Arkin—next to the Air France terminal.

We take judicial notice that the international terminal at JFK is operated by the Port Authority of the States of New York and New Jersey, so that complaints about the terminal's general lack of amenities can run only to it. It is apparent also that Transamerica as a charter airline, as opposed to a regular passenger airline, does not maintain its own facilities in the International Terminal, unlike, say, Air France. Thus the Arkins, who surely were aware when they purchased cheaper charter transportation that they would not have Concorde-type amenities in connection with their late night flight, have no complaint against the charter airline. If they were unaware of the lack of amenities and this in some way caused them harm, any complaint they have lies against their tour operator, as the district judge found.

Nothing in the case law supports the appellants' claims. *Rullman v. Pan American World Airways, Inc.,* 122 Misc.2d 445, 471 N.Y.S.2d 478 (Sup.Ct. 1983), the only case appellants cite for overturning the district court's decision, is inapposite. The plaintiff in *Rullman* fainted and fell on the jetway connecting the defendant's airplane with the airport terminal. In her suit for resulting injuries, plaintiff attributed her fall to weakness and fatigue arising from a lack of services by the defendant during two separate delays, the first at Rome for eight hours, the second at Ireland's Shannon Airport for three. 122 Misc.2d at 445–46, 471 N.Y.S.2d at 478–79. In *Rullman* the terminals involved were overcrowded and the plaintiff was forced to stand during much of the first of her two delays before the fall occurred. Causation could be established in the *Rullman* case by way of a claimed lack of food or drink causing a severe migraine headache and nausea, and because before the fall but during the second delay the

plaintiff had unsuccessfully sought to obtain medical treatment. The *Rullman* court concluded there was enough evidence that plaintiff's injury was proximately caused by the scheduled airline's failure to guard against negligently maintained terminal facilities so as to state a plausible claim and avoid summary judgment. *See id.* at 451, 471 N.Y.S.2d at 482.

Here, in contrast, appellants testified that the terminal was not overcrowded and that there was plenty of seating, and there can be no allegation that appellants had nothing to eat or drink, or the opportunity on Thursday morning to eat or drink. The Arkins did not seek medical attention at any time. They received accurate information. We agree with the district court that under these circumstances Transamerica breached no duty to the Arkins. *Cf., Bernstein v. Cunard Line, Ltd.,* 19 Av.Cas. (CCH) 17,485, 17,490 (S.D.N.Y.1985), [Available on WESTLAW, DCTU database] (airlines have no duty to feed and shelter passengers during weather-caused delays); *Hervey v. American Airlines,* 720 P.2d 712, 19 Av.Cas. (CCH) 18,531 (Okla.1986) (airline had no duty to warn passengeers of risk of rainy weather during the period of advertised tours). We therefore find it unnecessary to reach Transamerica's argument that the Arkins' claims were governed by the Warsaw Convention, being claims for damages occasioned by delay within the meaning of Article 19, and were barred by the two-year limitations period of Article 29.

Judgment affirmed.