Penina FISHMAN, an infant by her mother and natural guardian, Michelle FISHMAN; Michelle Fishman, individually, Plaintiffs–Appellants,

v.

DELTA AIR LINES, INC., Defendant–Appellee.

Nos. 1818, 2038, Dockets 96–9345, 96–9457.

United States Court of Appeals, Second Circuit.

Argued June 3, 1997.

Decided Jan. 5, 1998.

Elliot B. Pasik, Mineola, NY (Carole A. Burns & Associates, Mineola, NY, on the brief), for Plaintiffs–Appellants.

George P. McKeegan, New York City (Thomas A. McShane, Elizabeth B. Kane, McKeegan, McShane & Drago, P.C., New York City, on the brief), for Defendant–Appellee.

Before: MESKILL, JACOBS and LEVAL, Circuit Judges.

JACOBS, Circuit Judge:

Infant plaintiff Penina Fishman, while travelling as a passenger aboard an international flight, was scalded when a stewardess applied an over-hot compress to alleviate the child's earache. The child and her mother sued Delta Air Lines, Inc. ("Delta") under the Warsaw Convention, as well as for negligence and intentional torts in applying the compress, failing to advise the child's mother of the injury while the plane was aloft, and refusing to provide medical assistance when the plane landed. On this appeal, we consider whether all the child's claims are preempted by the Warsaw Convention and, if so, whether the two-year period of limitation under the Warsaw Convention is tolled (under New York law) during the child's minority. There are some other and subsidiary questions, including whether the mother's claims for emotional harm are similarly preempted.

The complaint was filed in the United States District Court for the Southern District of New York two years and three months after the flight. Judge Cedarbaum granted Delta's motion to dismiss on the ground that plaintiffs' suit was untimely.

We affirm.

## BACKGROUND

We summarize the facts that bear upon the issues addressed on appeal, and we assume that the material facts alleged in the complaint are true. *See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

On November 9, 1993, plaintiff Michelle Fishman and her two children were aboard a Delta flight from Tel Aviv to New York with a stopover at Orly Airport in Paris. Mrs. Fishman sat between her children with Penina, two years old, in the aisle seat on her right. During the descent at Paris, Penina began crying and touching her ear. The child, who had a cold, was evidently suffering from the change of air pressure. The stewardess suggested that a cup containing a warm cloth be placed over the ear. When this poultice was applied to Penina's right ear, scalding water in the cup dripped on the child's neck and shoulder, causing burns. Mrs. Fishman asked the crew to administer first aid before disembarkation, but the crew refused to do so. After a further confrontation at the gate, the child was rushed to Orly's first aid station and treated with topical ointment and a bandage.

The plaintiff mother and child arrived in New York on November 9, 1993. The complaint against Delta was filed on February 22, 1996. Michelle Fishman alleged claims on the infant's behalf under Article 17 of the Warsaw Convention, as well as claims under

New York law for negligence by the stewardess in inflicting the burn, and for the negligent or intentional denial of medical treatment both when the stewardess initially walked away, and later, aboard the plane after landing. Mrs. Fishman also filed claims on her own behalf under New York law for negligent and intentional infliction of emotional distress, and denial of Penina's services. Plaintiffs further assert (for the first time on appeal) an implied cause of action based on Delta's alleged failure to comply with 14 C.F.R. § 121.309(d), which requires an airline to maintain and use first aid kits for the protection of airline passengers.

On September 12, 1996, Judge Cedarbaum granted Delta's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(5), on the ground of untimeliness. *See Fishman v. Delta Air Lines, Inc.*, 938 F.Supp. 228 (S.D.N.Y.1996). The district court (i) considered the claims of both mother and child as falling within the scope of the Warsaw Convention; (ii) concluded that the two-year period of limitation in Article 29(1) of the Convention cannot be tolled by reason of infancy; and (iii) dismissed on the ground that the complaint was filed after the two-year period had expired. *Id.* at 230–31.

The chief questions presented on appeal are whether the torts alleged may be construed as arising from an "accident" under the Warsaw Convention and, if so, whether the period of limitation may be tolled during infancy.

## DISCUSSION

A. *Preemption under Article 17 of the Warsaw Convention: The "Accident" Requirement.*

■ We consider first whether plaintiffs' state law claims are preempted by the Warsaw Convention. *See Pflug v. Egyptair Corp.*, 961 F.2d 26, 29 (2d Cir.1992). All state law claims that fall within the scope of the Convention are preempted. *See In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1273 (2d Cir.1991).

■ Article 17 of the Convention provides:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the *accident* which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 U.S.C. § 40105 note (emphasis added). A claim falls within the scope of this provision if the "passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 1345, 84 L.Ed.2d 289 (1985). It is enough if in the chain of causation there is *"some link"* that was an unusual or unexpected event external to the passenger. *Id.* at 406, 105 S.Ct. at 1345.

■ The district court identified the scalding as the "accident" under the Warsaw Convention. On appeal, the plaintiffs cast their claims chiefly in terms of what happened afterward—the tortious refusal of medical care—and argue that such claims do not arise out of the normal operation of aircraft, and in any event are not accidental in nature. Plaintiffs rely on a line of cases in which the tortious failure of airlines to give medical aid to passengers suffering health emergencies was held to fall outside the Warsaw Convention. *See, e.g., Abramson v. Japan Airlines Co.*, 739 F.2d 130, 133 (3d Cir.1984) (preexisting hiatal hernia); *Tandon v. United Air Lines*, 926 F.Supp. 366, 369–70 (S.D.N.Y. 1996) (heart attack); *Walker v. Eastern Air Lines, Inc.*, 775 F.Supp. 111, 114 (S.D.N.Y. 1991) (asthma attack); *Fischer v. Northwest Airlines, Inc.*, 623 F.Supp. 1064, 1065 (N.D.Ill.1985) (heart attack).

Judge Cedarbaum distinguished these cases on the valid ground that all the claims asserted on behalf of Penina and her mother arose from the scalding by a flight attendant—an unexpected, unusual event that was external to both Fishmans. Her reasoning, which we approve, was as follows:

The underpinning of the claims of both mother and child is the scalding of Penina by a flight attendant, an *unexpected* event that was external to both Fishmans. The

precipitating cause, the "accident," cannot be artificially separated from its results as Fishman attempts to do in order to avoid the Warsaw Convention. Because Penina's injuries and Michelle's were caused by an "accident" within the meaning of the Warsaw Convention, the Convention provides the exclusive remedy and the state law claims are preempted.

*Fishman*, 938 F.Supp. at 230 (emphasis added; citation omitted).

Plaintiffs seize on and dispute the court's observation that "Penina had no pre-existing condition," and point to record facts that Penina suffered serial colds and ear infections, and had narrow eustachian tubes, all of which predisposed her to earache caused by the pressure change of the descent at Orly. However, we agree with Judge Cedarbaum that the injury here is not the earache, but the application of scalding water to treat it. The earache was caused by the change in air pressure, which is part of the normal operation of the plane as it descends, and was not an accident. All the harm alleged by both plaintiffs flows from the scalding, which is easily seen as accidental.

 Mrs. Fishman argues that her personal claims are solely for emotional harm and are therefore outside the scope of Article 17. We conclude that these claims for emotional harm are subject to Article 17 nevertheless because the claims arise from an accident—the scalding of her child. As we have already stated, Article 17 premises a carrier's *liability* on whether "a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Saks*, 470 U.S. at 405, 105 S.Ct. at 1345; *cf. Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99 (2d Cir.1997) (Warsaw Convention does not cover claim for personal injuries not arising from an accident). How-

ever, while all claims resulting from an "accident" are within the ambit of Article 17, not every such claim is compensable. The Supreme Court expressly held in *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), that damages for purely mental injuries are not recoverable. *Id.* at 534, 552, 111 S.Ct. at 1492, 1502. Thus, when Mrs. Fishman emphasizes that the only harm she suffered is emotional, she proves too much. Such claims are within the scope of Article 17 and therefore preempted, but she cannot recover any damages for such injuries under *Floyd. Cf. In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1273–76, 1282 (2d Cir.1991) (Article 17 permits only compensatory damages, but preempts state law claims for punitive damages). Accordingly, we hold that all of the claims of both Penina and Michelle Fishman are accident claims under Article 17.[1]

Our ruling today reinforces the holding in *Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99, a recent decision of this Court. The issue presented in *Tseng* was whether an invasive but routine security search of a passenger thought to present a possible risk of terrorism could be considered an "accident" covered by Article 17. A panel of this Court held that the search was not such an accident for three interrelated reasons. First, in general, a security search of an international airline passenger is "a routine procedure of international air traffic," *id.* at 102, and passengers can reasonably expect to undergo such scrutiny when they travel by air. *Id.* at 102. Second, more specifically, the particular search conducted by the defendant in *Tseng* was called for by the airline's normal, everyday procedure, and did not deviate from it. Third, the search was incident to the prevention of terrorism, a purpose that the Convention was not intended to derogate.

---

1. We therefore have no occasion to consider whether Mrs. Fishman could recover had she suffered emotional injury coupled with physical injury. The Supreme Court has not specifically addressed this issue, *see Floyd*, 499 U.S. at 552–53, 111 S.Ct. at 1502–03, although some lower courts have permitted such recovery. *See In re Inflight Explosion on Trans World Airlines, Inc.*, 778 F.Supp. 625, 637 (E.D.N.Y.1991) (the implication of *Floyd* is that psychological injury accompanying physical injury is covered by Article

17) (Weinstein, J.), *rev'd on other grounds*, 975 F.2d 35 (2d Cir.1992); *see also In re Aircrash Disaster Near Roselawn, Indiana*, 954 F.Supp. 175, 178–79 (N.D.Ill.1997) (recovery permitted for pre-impact fear if accompanied by physical injury or death in accident); *Jack v. Trans World Airlines, Inc.*, 854 F.Supp. 654, 664–668 (N.D.Cal.1994) (recovery allowed for emotional distress flowing from impact injuries or for emotional distress with physical manifestations).

In sum, *Tseng* holds that a plaintiff's unusual reaction to a routine and expected incident of airline travel, including any procedure that is conducted in the routine and expected manner, is no accident within the meaning of the Convention. Thus, an individual nauseated by a bumpy ride or standard airline fare or—as in *Tseng*—a person squeamish about a pre-flight search, cannot allege an injury resulting from an accident under Article 17. By the same token, a claim *does* allege an "accident" if it arises from some inappropriate or unintended happenstance in the operation of the aircraft or airline. Thus, an injury resulting from routine procedures in the operation of an aircraft or airline can be an "accident" if those procedures or operations are *carried out* in an unreasonable manner. (The result in *Tseng* might have been different had the plaintiff been harmed by an unreasonably rough and invasive search.)

The application of a hot compress to Penina's ear may have been a routine measure for relieving the pain suffered by passengers incident to the descent of the aircraft; but the measure was carried out in a way (using excessive, scalding water) that was not expected, usual, normal, or routine. We conclude that the burning of Penina Fishman (and each of the claims arising from that incident) was an Article 17 accident.

## B. Applicability of Local Tolling Provisions to Warsaw Convention Time Limitations.

Plaintiffs' filing of suit more than two years after their flight's arrival in New York exceeds the time limitation fixed in Article 29 of the Convention, subsection (1):

> The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.

49 U.S.C. § 40105 note. Plaintiffs contend however that under New York law, the two-year limitations period should be tolled during Penina's infancy, *see* N.Y. C.P.L.R. § 208 (McKinney 1990), and that such tolling is allowed under subsection (2) of Article 29, which provides:

> The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted.

49 U.S.C. § 40105 note.

This tolling issue presents a preliminary but not necessarily controlling question as to whether the period is a statute of limitations or a condition precedent. *Compare Molitch v. Irish Int'l Airlines*, 436 F.2d 42, 43 (2d Cir.1970) (referring to Article 29(1) as a statute of limitations), *with Kahn v. Trans World Airlines, Inc.*, 82 A.D.2d 696, 443 N.Y.S.2d 79, 87 (2d Dep't 1981) ("[T]he time limitation incorporated in article 29 was intended to be in the nature of a condition precedent to suit."). Ordinarily, a time limitation is deemed a condition precedent if it is fixed in the statute that creates the cause of action, whereas a statutory time limitation must be pleaded as the affirmative defense of statute of limitations if the cause of action was previously cognizable either at common law or by virtue of another statute. *See Romano v. Romano*, 19 N.Y.2d 444, 447, 280 N.Y.S.2d 570, 227 N.E.2d 389 (1967); *Clark v. Abbott Labs.*, 155 A.D.2d 35, 553 N.Y.S.2d 929, 933 (4th Dep't 1990). We have already held that the Warsaw Convention creates the causes of action asserted under it. *See Benjamins v. British European Airways*, 572 F.2d 913, 919 (2d Cir.1978) (Lumbard, J.); *see also Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir.1996). Accordingly, the time limitation in Article 29 is best termed a condition precedent to suit, a kind of limitation that is often deemed not subject to tolling. *See Cohen v. Pearl River Union Free School Dist.*, 51 N.Y.2d 256, 264, 434 N.Y.S.2d 138, 414 N.E.2d 639 (1980); *Dreger v. New York State Thruway Auth.*, 177 A.D.2d 762, 575 N.Y.S.2d 743, 744 (3d Dep't 1991).

The district court determined that the language of Article 29 was ambiguous, and therefore based its conclusion that tolling was inappropriate on an analysis of the negotiating history of the treaty. Plaintiffs argue that the Warsaw Convention is unambiguous; that it unambiguously allows tolling under the rules of the forum; that these conclusions were reached by the French Cour de

Cassation; and that the construction of the tolling provision by that court is particularly persuasive because the Convention was drafted in French. We reject all of these propositions.

 In interpreting the Warsaw Convention, we look first to the literal language of the treaty and go no further if that language is reasonably susceptible to no more than one interpretation. *See Tai Ping Ins. Co. v. Northwest Airlines, Inc.*, 94 F.3d 29, 31 (2d Cir.1996). We agree with the district court that the language of Article 29 is reasonably susceptible to conflicting interpretations. *See Fishman*, 938 F.Supp. at 230. On the one hand, as plaintiffs argue, the wording in Article 29(2) that leaves to the forum the "method of calculating the period of limitations" could be taken to encompass the forum's tolling provisions. Three district court opinions have so held. *See Halmos v. Pan American World Airways, Inc.*, 727 F.Supp. 122, 123 (S.D.N.Y.1989); *Joseph v. Syrian Arab Airlines*, 88 F.R.D. 530, 532 (S.D.N.Y. 1980); *Flanagan v. McDonnell Douglas Corp.*, 428 F.Supp. 770, 776 (C.D.Cal.1977); *see also Royal Ins. Co. v. Emery Air Freight Corp.*, 834 F.Supp. 633, 635 (S.D.N.Y.1993) ("method of calculating" language "could be interpreted as allowing local statutes of limitations to modify the two-year limitations period"). On the other hand, the same wording can be read merely to invoke the power of the forum court to determine whether the plaintiff accomplished the filing within the limitation period, a question that may involve (for example) the proper party or agent for receipt of process, and the means of service—in other words, matters bearing upon when an action has been "brought." One court has concluded that this is the clear and unambiguous meaning of the Article 29 language. *See Data General Corp. v. Air Express Int'l Co.*, 676 F.Supp. 538, 540 (S.D.N.Y.1988).

 Because the language of Article 29 is susceptible to at least two plausible interpretations, we turn to the negotiating history of the Convention to resolve the ambiguity. *See Tai Ping Ins. Co.*, 94 F.3d at 31 (When the text of a treaty is unclear, "[w]e may apply traditional methods of interpretation."). The Supreme Court has explicitly sanctioned the use of a treaty's legislative history to understand its meaning. *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, ——, 116 S.Ct. 629, 634, 133 L.Ed.2d 596 (1996) ("Because a treaty ratified by the United States is not only the law of this land ..., but also an agreement among sovereign powers, we have traditionally considered as aids to its interpretation the negotiating and drafting history (travaux préparatoires) and the post-ratification understanding of the contracting parties."); *Saks*, 470 U.S. at 396, 105 S.Ct. at 1340 ("Treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties.") (quoting *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 431–32, 63 S.Ct. 672, 677–78, 87 L.Ed. 877 (1943)).

Almost every court that has reviewed the drafting minutes of the Convention, including the district court in this case, has rejected the contention that Article 29(2) incorporates the tolling provisions otherwise applicable in the forum. *See, e.g., Castro v. Hinson*, 959 F.Supp. 160, 163 (E.D.N.Y.1997); *Fishman*, 938 F.Supp. at 230; *Royal Ins. Co.*, 834 F.Supp. at 636; *Kahn*, 443 N.Y.S.2d at 87. The minutes reveal that the drafters of the Convention specifically considered and rejected a proposed provision that would have allowed the limitations period to be tolled according to the law of the forum court. *See* R.C. Horner and D. Legrez, Minutes of the Second International Conference on Private Aeronautical Law, 110–13 (1975); *Kahn*, 443 N.Y.S.2d at 86–87; *Royal Ins. Co.*, 834 F.Supp. at 636. As the district court recognized, the main concern of the drafters in rejecting the tolling proposal was "to remove those actions governed by the Convention from the uncertainty which would attach were they to be subjected to the various tolling provisions of the laws of the member states." *Kahn*, 443 N.Y.S.2d at 87. Moreover, the debates over the language ultimately adopted in Article 29 indicate that the only matter to be referred to the forum court by subsection 2 of Article 29 was "the determination of whether the plaintiff had taken the necessary measures within the two-year period to invoke that particular court's jurisdiction over the action." *Id.*

Plaintiffs focus on the minutes of the negotiating session that followed the one in which the drafters discussed and rejected the proposal to amend Article 29 to permit tolling. Plaintiffs say that these minutes raise difficult questions regarding the intent behind Article 29, and the significance to be accorded the rejection of the tolling proposal. These passages from the minutes are far from clear, and they seem hardly relevant. An amendment was proposed that would have expressly allowed what plaintiffs want to do; a reason for rejecting that proposal (the uncertainty of various tolling provisions would frustrate the strict two year limit) was clearly articulated; and the proposal was rejected on the merits. Subsequent statements by individual delegates, however ambiguous, do not alter our understanding of the intent behind the enactment of the language in Article 29.[2]

Plaintiffs direct our attention to the decision of France's Cour de Cassation in *Lorans v. Air France* (Cour de Cassation [Assemblée Plénière] Jan. 14, 1977). According to treatises cited by plaintiffs (no copy of the opinion was furnished to us), that court ruled that the running of the Article 29 time limitation can be suspended by reason of minority status. According to plaintiffs, the French court reasoned that in order for an international convention to replace municipal law, the *text* of the convention must *unequivocally establish* that the ordinarily applicable municipal law must be set aside. Plaintiffs also rely upon the argument articulated by the French First Avocat–General in *Lorans*, to the effect that since the Warsaw Convention was open to adhesion by states (like the United States) that were not party to the negotiations or the drafting of the text, those nations are bound only by the letter of the text. We are unpersuaded.

The *Lorans* decision proceeds along lines that are foreign to the principles of treaty construction adopted by our legal system. As we said above, United States courts look to the legislative history of a treaty when the textual language is ambiguous. Whether or not the United States was a High Contract-

ing Party to the Warsaw Convention has no discernible bearing on the rules of construction set out by the Supreme Court and this Court. *See Zicherman,* 516 U.S. at ——, 116 S.Ct. at 634; *Saks,* 470 U.S. at 396, 105 S.Ct. at 1340; *Tai Ping Ins. Co.,* 94 F.3d at 31.

Finally, plaintiffs raise for the first time on appeal causes of action based upon defendant's alleged breach of certain rules in the Code of Federal Regulations. These claims were not asserted in the complaint, and were never mentioned at any point in the district court proceedings. We will not consider them now. *See Lo Duca v. United States,* 93 F.3d 1100, 1104 (2d Cir.) (as a matter of prudence a federal appellate court generally will not consider an issue not passed upon below), *cert. denied,* —— U.S. ——, 117 S.Ct. 508, 136 L.Ed.2d 399 (1996).

## CONCLUSION

The judgment of the district court dismissing plaintiffs' complaint is affirmed.

---

**2.** We also reject plaintiffs' reliance on the minutes of the 1971 Guatemala City Conference. *See generally Floyd,* 499 U.S. at 550, 111 S.Ct. at 1501 (Guatemala City Protocol not dispositive in interpreting Warsaw Convention because the United States Senate has not ratified the Protocol, and only a few of the 120 signatories of the Warsaw Convention have adopted it.)