Carolyn McDOWELL, individually and as Personal Representative of the Estate of John McDowell, deceased, Plaintiffs,

v.

CONTINENTAL AIRLINES, INC., a Delaware corporation authorized to do business in the State of Florida, Defendant.

No. 96–7238–Civ.

United States District Court,
S.D. Florida.

April 7, 1999.

Tod N. Aronovitz, Aronovitz & Associates, P.A., Miami, FL, Steven M. Frei, Haight Tramonte Siceliano Flask & Yeonas, Vienna, VA, for plaintiffs.

Dennis M. O'Hara, Gregory Mark Palmer, Wicker Smith Tutan O'Hara McCoy Graham & Ford, P.A., Fort Lauderdale, FL, for defendants.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon Defendant's Motion for Summary Judgment, filed February 8, 1999 (D.E.# 77). The Motion has been fully briefed and is ripe for disposition.

## I. BACKGROUND

On May 18, 1996, John McDowell and his wife, Carolyn, boarded a charter flight operated by Continental Airlines as flight number 2000 at Newark, New Jersey. The destination of Flight 2000 was Nassau, Bahamas.

At one point during the flight, somewhere between forty-five minutes and over one hour prior to landing in Nassau, Mr. McDowell became ill and collapsed. As it later turned out, Mr. McDowell had suffered a heart attack.

After Mr. McDowell collapsed, Continental flight attendants announced a medical emergency over the public address system and asked for any medical personnel on board to report to the back of the plane. Two people responded. One was a registered nurse and the other a cardiovascular surgeon.

The doctor and the nurse tended to Mr. McDowell. The doctor looked through the plane's emergency medical kit, but found that it was not well equipped with medicine or equipment for the present emergency situation.

The doctor asked the lead flight attendant how soon the plane could land. The doctor informed her that it was important to get Mr. McDowell on the ground and to a hospital as soon as possible.

The flight attendant contacted the cockpit and then informed the doctor that it would be about forty-five minutes. The doctor continued to inquire as to how soon the plane could land and to assert the importance of getting Mr. McDowell on the ground. About fifteen minutes after the initial inquiry, the flight attendant checked with the cockpit again and informed the doctor that the flight would land in Nassau, the intended destination.

No one from the cockpit ever spoke to the doctor or Mrs. McDowell. It is in dispute whether anyone from the cockpit ever came to the rear of the aircraft to assess the situation.

The doctor informed the flight crew that an ambulance must be waiting when the plane arrived in Nassau. The doctor also stressed that the ambulance must be equipped with all of the proper cardiac equipment and the ambulance crew must be ready to take over ongoing resuscitative efforts of the patient.

Upon arrival, the doctor discovered that the ambulance did not have bicarbonate soda or calcium medication, both of which the doctor felt were necessary for the proper treatment of Mr. McDowell.[1]

The ambulance crew was also unable to intubate Mr. McDowell properly and was unable to properly start the I.V.

Mr. McDowell died shortly after arriving at the hospital.

At the hospital, the treating physician told Mrs. McDowell that by the time her husband arrived in the Bahamas, his condition was too advanced to save him. The physician also told Mrs. McDowell that he felt the plane should have landed in the United States.

Mrs. McDowell later filed the instant suit alleging that Defendant negligently and through willful misconduct failed to divert the aircraft to the nearest major airport, failed to properly equip its aircraft with emergency medical equipment, and failed to secure necessary immediate medical attention for Mr. McDowell.

Defendant filed this Motion arguing that summary judgment is appropriate because the Warsaw Convention (the "Convention")[2] provides the exclusive remedy for personal injury suffered on board an aircraft engaged in international travel, and the acts and events alleged do not constitute an "accident" as required by Article 17 of the Convention.

## II. SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

1. The doctor also noted that it would have been helpful if dopamine were available, but it was not.

2. Convention for the Unification of Certain Rules Relating to International. Transportation by Air, Oct. 12, 1929, 94 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. § 40105.

law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997) (citation omitted).

The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant bears the burden of pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita,* 475 U.S. at 586 n. 11, 106 S.Ct. 1348.

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## III. DISCUSSION

Defendant argues that summary judgment is appropriate because the instant case is governed by the Warsaw Convention and Plaintiff cannot state a claim thereunder since she cannot prove that the injury was caused by an "accident" as required by Article 17.

Plaintiff responds (A) that Defendant has failed to produce any material evidence that the contract of carriage incorporated the Warsaw Convention; (B) that the Bahamas is not a signatory nation to the Warsaw Convention, and therefore this case does not fall thereunder; (C) that the injury was caused by an "accident" under Article 17; and (D) that the injury was caused by Defendant's "wilful misconduct" under Article 25.

### A. THE CONTRACT OF CARRIAGE

Plaintiff claims that Defendant has introduced no material evidence that the contract of carriage incorporated the Warsaw Convention liability limitations.

Defendant has in fact introduced such evidence. Defendant submitted the affidavit of Ilyse Prokocimer–Karkowski. Ms. Prokocimer–Karkowski is the president of Prokocimer International Enterprises, Inc., d/b/a Nassau/Paradise Island Express. Her company issued the flight coupon for Mr. McDowell's flight to Nassau. Ms. Prokocimer–Karkowski's affidavit states that the passenger coupon retained by the passenger incorporates the Warsaw Convention limitations of liability on its reverse side.

■ Plaintiff has introduced no evidence at all to contradict the statements in this affidavit. As stated above, the non-movant must come forward with some affirmative evidence to create an issue of material fact. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

Plaintiff may not merely make conclusory allegations casting doubt upon Defendant's evidence. *See Matsushita,* 475 U.S. at 586 n. 11, 106 S.Ct. 1348. While the Court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), there must exist more than some alleged factual dispute between the parties. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

The Court finds that Plaintiff has failed to establish a genuine factual issue as to contract of carriage's incorporation of the liability limitations contained in the Warsaw Convention.

## B. THE BAHAMAS AS SIGNATORY NATION

Plaintiff next asserts that the instant action is not covered by the Warsaw Convention because the flight was not between "two Warsaw Convention signatory nations" as required by Article 1(2).

Plaintiff claims that the Bahamas is not a signatory nation to the Warsaw Convention.

This Court agrees with Defendant that Plaintiff is incorrect. The Bahamas is indeed a signatory nation to the Convention. *See* Treaty Affairs Staff, United States Department of State, *Treaties in Force* 323 (1996).

Therefore, the court finds that Plaintiff's second argument fails.

## C. "ACCIDENT" UNDER ARTICLE 17

Defendant argues that Plaintiff's cause of action is precluded because the acts and events on Flight 2000 do not constitute an "accident" under Article 17. Therefore, Plaintiff has no cause of action under the Warsaw Convention. Defendant claims that since the Convention is the sole remedy for passengers who suffer personal injury in international flight, Plaintiff has no cause of action at all.

Plaintiff contends that the acts and events on Flight 2000 do in fact constitute an "accident."

■ In the recently decided case of *El Al Israel Airlines v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999), the Supreme Court held that recovery for a personal injury suffered on board an aircraft engaged in international travel, "if not allowed under the Convention, is not available at all." *Id.* at 668. The Court held that the Convention provides the exclusive cause of action for injuries sustained during international air transportation. *Id.* at 668, 675.

Thus, if Plaintiff cannot show that Mr. McDowell's injury and subsequent death are actionable under the Convention, she has no cause of action. *Id.* at 675.

To sustain a cause of action under the Convention, Plaintiff must show that the complained of injury was caused by an "accident"[3] under Article 17.[4] Article 17 of the Convention states:

> The carrier shall be liable for damage sustained in the event of the death or

---

**3.** In *Tseng,* the plaintiff alleged that she suffered mental and psychic injury due to a fifteen minute search prior to boarding an El Al flight to Israel. The Supreme Court did not address whether the search of Plaintiff constituted an "accident" under Article 17 since she did not contest the Court of Appeals conclusion that it did not. *Tseng,* 119 S.Ct. at 670.

**4.** Likewise, if a plaintiff cannot show that an accident caused death, physical injury, or physical manifestation of an injury, the claim fails to satisfy Article 17. *Tseng,* 119 S.Ct. at 670 n. 9; *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991).

wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018.

In *Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), the Supreme Court defined "accident" as used in Article 17. The Court held that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405, 105 S.Ct. 1338. An "accident" does not include injuries resulting from "a passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Id.* at 406, 105 S.Ct. 1338. However, the Court also cautioned that "[t]his definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* at 405, 105 S.Ct. 1338.

Plaintiff concedes that Mr. McDowell's heart attack was an *internal* condition not caused by any unexpected or unusual event. Plaintiff contends that the accident is not the heart attack itself, but the alleged aggravation of Mr. McDowell's condition by the negligent failure of Defendant to render him medical assistance.

### 1. Inadequate On–Board Medical Kit

Plaintiff asserts that Continental's failure to have adequate and necessary medical equipment on its aircraft, if true, constitutes an "accident."

Plaintiff's bald assertion that the medical kit was inadequate may be sufficient to survive a motion to dismiss, but on a motion for summary judgment, Plaintiff has the duty to come forward with some evidence that the medical kit was in fact inadequate and that Defendant was negligent in maintaining it in such a condition.

While Plaintiff has introduced the deposition of Dr. Pinder who indicates that in his opinion, the medical kit was inadequate for the medical emergency at hand, Plaintiff has introduced no evidence that Defendant was negligent in maintaining the medical kit as it was.

Defendant accurately argues that the record indicates that the medical kit was in compliance with applicable Federal Aviation Regulations. 14 C.F.R. Part 121 App. A (describing requirements for First–Aid kits and Emergency Medical kits). Plaintiff, on the other hand, does not point to any Federal Aviation requirements, any other industry guidelines, or any evidence whatsoever to indicate negligence. Plaintiff merely states that she "do[es] not concede" that the medical kit met the F.A.A. regulations or that F.A.A. regulations were industry standard at the time.

Even if the medical kit was not adequate for this kind of emergency, Plaintiff has introduced no evidence that Defendant was negligent in not having a medical kit fully equipped for this kind of emergency.

As the Court previously stated, such conclusory allegations or denials are insufficient to create an issue of material fact. *Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505.

Because Plaintiff has failed to raise any genuine issue of material fact as to Defendant's alleged negligence in its maintenance of the medical kit, the Court need not decide whether a failure to properly maintain a medical kit constitutes an "accident" under Article 17.

### 2. Failure to Land in the United States

The heart of Plaintiff's opposition to Defendant's Motion is that Defendant negligently and through willful misconduct failed to land the aircraft in the United States and that such failure to land constitutes an "accident" under Article 17.

Defendant counters that even if it was negligent in continuing to its original desti-

nation, continuation to a scheduled destination is not an "accident." Defendant asserts that this issue has been settled in this Circuit by the decision in *Krys v. Lufthansa German Airlines,* 119 F.3d 1515 (11th Cir.1997).

The facts of *Krys* are amazingly similar to the facts of the instant case. However, the legal objectives of the parties in *Krys* were strikingly different from those of the parties in this case.

In *Krys*, the plaintiffs argued that the airplane crew's negligent treatment of a heart attack victim by continuing the flight to its scheduled destination was *not* an "accident" under Article 17. Therefore, they argued, plaintiffs could bring a cause of action under state law. The defendant airline argued that the crew's negligence in continuing to the scheduled destination was an "accident," and thus the plaintiffs' state law claim was preempted by the Warsaw Convention, and the plaintiffs recovery was limited to the liability amounts stated in the Convention.

The Eleventh Circuit agreed with the plaintiffs and allowed a $2.4 million recovery under Florida tort law. *Id.* at 1522. The *Krys* court found that

> if, in the instant case, the aggravating event is the continuation of the flight from its scheduled point of departure to its scheduled point of arrival, then it seems clear that the aggravation injury arises not from an unexpected or unusual happening, but rather from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft.

119 F.3d at 1521 (internal quotes omitted).[5] Therefore, the court held, the crew's continuing the flight to its destination was not an "accident." *Id.* at 1522.

When it decided *Krys*, the Eleventh Circuit was of the opinion that where a plaintiff did not have a claim under the Convention, she could resort to state law.[6] However, the *Tseng* decision has eliminated that possibility.

This appears to create an absurd result. Although the *Krys* decision allowed the plaintiffs there a larger recovery under state law than they could secure under the Convention, after the *Tseng* decision, the *Krys* rationale operates to completely deprive the instant Plaintiff and future plaintiffs in similar positions of any cause of action whatsoever.

While a primary purpose of the Warsaw Convention may have been to limit the liability of air carriers, *see Floyd*, 499 U.S. at 546, 111 S.Ct. 1489, complete absolution of liability was surely not a purpose.

■ It is recognized in most jurisdictions that airlines owe a heightened duty of care to their passengers. *See* 49 U.S.C. § 44701(d)(1)(A) ("the duty of an air carrier to provide service with the highest degree of safety in the public interest"); *see also Krys*, 119 F.3d at 1527 (under Florida law a common carrier generally must "ex-

---

**5.** The Eleventh Circuit identified the continuation of the flight to its scheduled point of arrival as the relevant event by asking "what precise event or events allegedly caused the damage sustained by the plaintiff." *Krys*, 119 F.3d at 1521 n. 10. Likewise, other than the medical kit addressed above, the continuation of Flight 2000 to Nassau appears to be the relevant event in the instant case.

**6.** The Eleventh Circuit recognized a then-existing circuit split on the "total preemption argument" but declined to entertain that argument. *Krys*, 119 F.3d at 1518 n. 8.

In fact, in every decision that this Court has found where a heart attack was held not to be an "accident," the deciding court found that the plaintiff(s) had a recourse to state law. *See Krys*, 119 F.3d 1515; *Tandon v. United Air Lines*, 926 F.Supp. 366 (S.D.N.Y.1996); *Fischer v. Northwest Airlines, Inc.*, 623 F.Supp. 1064 (N.D.Ill.1985); *Northern Trust Company v. American Airlines*, 142 Ill.App.3d 21, 491 N.E.2d 417, 96 Ill.Dec. 371 (1985). *Cf. Seguritan v. Northwest Airlines, Inc.*, 86 A.D.2d 658, 446 N.Y.S.2d 397 (N.Y.App.Div.) (finding aggravation of heart attack by airlines's alleged negligent failure to render medical assistance was an "accident," and Convention's two-year limitations period applied), *aff'd*, 57 N.Y.2d 767, 440 N.E.2d 1339, 454 N.Y.S.2d 991 (mem.) (1982).

ercise the highest degree of care, foresight, prudence and diligence reasonably demanded at any given time by the conditions and circumstances") (citation omitted).

However, the result that is mandated by the confluence of *Tseng*[7] and *Krys* creates an incentive to airlines engaged in international travel not only not to exercise the highest degree of care, but to completely refuse to treat passengers who are in need of medical help so long as the immediate causes of the medical conditions are internal to the passengers.

An airline crew who attempts to aid a passenger and does something that would fall under the current definition of "accident" opens the airline up to liability.[8] However, if the crew completely ignores the passenger and continues the flight as if nothing had happened, the airline is completely immune from any liability.

The result of the union of *Krys* and *Tseng* is a dissolution of an airline's duty of care to its passengers so long as the cause of a passenger's initial injury is internal to the passenger himself. This holds true so long as the airline takes no affirmative action which aggravates the injury. Complete inaction is acceptable, even if in doing nothing the airline aggravates the passenger's injury.

Thus, under the current law, an "accident" occurs when a terrorist attacks an airplane even though the airline took no positive step to aid the terrorist, *see Evangelinos v. Trans World Airlines*, 550 F.2d 152 (3d Cir.1977) (*en banc*), *cited with approval in Saks*, 470 U.S. at 405, 105 S.Ct. 1338, yet no "accident" occurs when an airline consciously decides not to aid a passenger suffering from serious illness.

Surely, the Senate in ratifying the Warsaw Convention did not intend to eliminate an airline's duty of care to passengers who just happen to suffer from an internal condition.

■ Be that as it may, this Court is bound by Eleventh Circuit precedent, and Eleventh Circuit precedent states that the continuation of a flight to its initial destination is not an "accident" under Article 17.

Therefore, the Court finds that the continuation of Flight 2000 to its destination of Nassau, Bahamas is not an "accident" under Article 17 of the Warsaw Convention. Accordingly, the Court finds that Plaintiff has not stated a cause of action under Article 17.

### D. ARTICLE 25 "WILFUL MISCONDUCT"

Plaintiff makes some argument that she has a cause of action under Article 25 of the Convention. Article 25(1), provides:

The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be the equivalent to wilful misconduct.

49 Stat. 3020.

Justice Stevens in his *Tseng* dissent makes the argument that cases arising out of "wilful misconduct" are unequivocally governed by local law under Article 25. *Tseng*, 119 S.Ct. at 676 (Stevens, J., dis-

---

**7.** Even without *Tseng*, this would be the mandated outcome for cases occurring after the Senate's adoption of Montreal Protocol No. 4. *See* S.Exec.Rep. No. 105–20, pp. 21–32 (1998).

**8.** In *Fishman v. Delta Air Lines*, 132 F.3d 138 (2d Cir.1998), a child was scalded by hot water after a flight attendant gave him a cup containing a warm cloth to treat an earache and hot water dripped out. The plaintiff, seeking to avoid the Convention's two-year limitation, contended that the cause of the injury was the failure to give treatment after the scalding and thus was not an "accident" under the Convention. The Second Circuit held that the cause of the injury was the scalding of the child by the flight attendant which was an "accident" under the Convention. *Id.* at 142.

senting). Therefore, he argues, the Convention does not preempt local law in cases arising out of such "wilful misconduct." *Id.*[9]

█ At first blush, this appears to be a persuasive argument. However, the Eleventh Circuit has previously held that Article 25 does not create a cause of action separate from Article 17. *Floyd v. Eastern Airlines*, 872 F.2d 1462, 1483–85 (11th Cir.1989), *rev'd on other grounds*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Although *Floyd* dealt with the issue of punitive damages, its holding applies to the instant matter.

The *Floyd* court held that Article 25 merely states that willful misconduct by an airline or its agents will remove the liability cap contained in Article 22.[10] *Id.* at 1484. Article 25 does not state that the Convention as a whole is inapplicable to those situations. *See In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475, 1488–89, 289 U.S.App.D.C. 391, 404–05 (D.C.Cir.1991) (holding that Article 17 is not among those provisions that "exclude or limit" liability to which Article 25 applies).

The provisions of the Convention that create liability for injuries to passengers, damage to baggage and cargo, and delay, are Articles 17, 18, and 19, respectively. *Floyd*, 872 F.2d at 1483. Therefore, for injuries to passengers, it is a prerequisite that the requirements of Article 17 be satisfied in order for liability to be found. *Id.*

Thus, even if the conduct of Defendant amounted to "wilful misconduct," such misconduct does not create a separate state law cause of action, and Plaintiff must still show that an "accident" caused the injury.

9. The majority opinion expressly refused to address whether the plaintiff had a claim under Article 25. *Tseng*, 119 S.Ct. at 670.

10. Article 22 of the Convention, as modified, limits recovery to $75,000.00. *See* Agreement

## IV. CONCLUSION

In conclusion, the Court finds that the instant matter is covered by the Warsaw Convention.

The Court further finds that Plaintiff has raised no issue of material fact that would prevent the Court from granting summary judgment. Plaintiff has introduced no evidence to indicate that the contract of carriage did not incorporate the liability limitations of the Warsaw Convention. Also, Plaintiff has introduced no evidence that the Bahamas is not a signatory nation to the Convention.

Moreover, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Mr. McDowell's death was not caused by an "accident" under Article 17. Plaintiff has introduced no evidence that Defendant was negligent in its maintenance of the medical kit. Likewise, the Court finds that Defendant's continuation of Flight 2000 to its original destination was not "accident" as that term was interpreted by the Eleventh Circuit in *Krys v. Lufthansa German Airlines*, 119 F.3d 1515.

Additionally, the Court finds that Article 25 of the Convention does not create a cause of action separate from Article 17.

Since Mr. McDowell's death was not caused by an "accident," Plaintiff cannot state a claim under the Warsaw Convention. Since Plaintiff cannot state a claim under the Convention, she has no cause of action whatsoever.

Therefore, summary judgment is appropriate for Defendant.

Accordingly, having reviewed the Motion and the record, and being otherwise duly advised, it is hereby

**ORDERED AND ADJUDGED** as follows:

Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18990, approved by order E–23680, May 13, 1966 (Docket 17325), 31 Fed. Reg. 7302 (1966).

1. Defendant's Motion for Summary Judgment, filed February 8, 1999 (D.E.# 77), is **GRANTED.**

2. Defendant is **DIRECTED** to file a proposed Order of Final Judgment against Plaintiff Carolyn McDowell, individually and as Personal Representative of the Estate of John McDowell, deceased, for entry herein within fifteen (15) days of the date of this Order.