**SCALA**

v.

**AMERICAN AIRLINES**

**No. 3:02CV755 (JBA).**

United States District Court, D. Connecticut.

March 13, 2003.

John Fielding Wynne, Jr., Buckley & Wynne, New Haven, CT, for Plaintiff.

Tory A. Weigand, Peter C. Knight, Morrison Mahoney & Miller, Boston, MA, Elizabeth M. Cristofaro, Darren E. Sinofsky, Morrison, Mahoney & Miller, LLP, Hartford, CT, for Defendant.

*Ruling on Defendant's Motion for Judgment on the Pleadings*
*[Doc. # 16]*

ARTERTON, District Judge.

Plaintiff Neil Scala commenced this action in state court, alleging personal injury aboard one of defendant American Airline's international flights. American Airlines ("American") removed the case to this Court, and has now moved for judgment on the pleadings, asserting that Scala's claims are not cognizable under the Warsaw Convention.[1] For the reasons set out below, the motion is denied.

## I. Factual Background

As part of his return trip to the United States, Scala was a passenger aboard American Flight 1566 from Aruba to Puerto Rico. He alleges that he requested a cranberry juice from the flight attendant as part of the in-flight beverage service, but was instead served (and consumed) cranberry juice with alcohol. As a result of the mix-up, Scala allegedly suffered physical injury to his heart. There is no dispute that the alleged incident took place on an international flight, or that Scala suffered from a pre-existing heart condition.

## II. Standard

In deciding a motion made under Fed. R.Civ.P. 12(c), the Court "appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999) (citation omitted). The complaint should not be dismissed unless it

---

**1.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), 137 L.N.T.S. 11, reprinted in 49 U.S.C. § 40105 note.

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

III. Discussion

"[T]he Warsaw Convention created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the 'international transportation of persons, baggage, or goods performed by aircraft.'" *King v. American Airlines, Inc.*, 284 F.3d 352 (2d Cir.2002) (*quoting* Warsaw Convention, Art. 1 and *citing El Al Isr. Airlines v. Tseng*, 525 U.S. 155, 169–70, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) ("*Tseng II*")). The parties are in agreement that Article 17 of the Warsaw Convention is applicable to Scala's claim and provides the exclusive means of any relief, *see* Def's Mem. Supp. [Doc. # 16] at 3–6; Pl's Mem. Opp. [Doc. # 18] at 1, 3; *see also Tseng II*, 525 U.S. at 160–61, 119 S.Ct. 662; they disagree, however, as to whether Scala has actually stated a claim under the Convention.

■ Article 17 provides:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

While Article 17 preempts a large swath of claims, *see, e.g., King*, 284 F.3d at 355 (claim that airline bumped plaintiffs from an overbooked flight because of plaintiffs' race was preempted by Article 17 even though no damages could be recovered under Article 17), a plaintiff may actually recover damages for claims within Article 17's preemptive scope if: (1) an accident has occurred, in which (2) a passenger suffered death, wounding, or any other bodily injury, and (3) the accident occurred either on board the aircraft or in the course of embarking or disembarking from the plane. *See Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 535–536, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). It is undisputed, for the purposes of this Rule 12(c) motion, that Scala suffered bodily injury and that the event in question happened on board the aircraft, thus satisfying the second and third requirements. What is in dispute is whether the drink mix-up was an "accident" such that the first requirement is satisfied.

An accident, for the purposes of Article 17, is "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). In *Saks*, the Supreme Court held that there was no Article 17 "accident" when plaintiff's deafness resulted from the routine and expected operation[2] of the air-

---

2. "On November 16, 1980, [Saks] boarded an Air France jetliner in Paris for a 12–hour flight to Los Angeles. The flight went smoothly in all respects until, as the aircraft descended to Los Angeles, Saks felt severe pressure and pain in her left ear. The pain continued after the plane landed, but Saks disembarked without informing any Air France crew member or employee of her ailment. Five days later, Saks consulted a doctor who concluded that she had become permanently deaf in her left ear. * * * All the

plane's pressurization system. Two Second Circuit cases, *Tseng v. El Al Isr. Airlines*, 122 F.3d 99 (2d Cir.1997) ("*Tseng I* "), *rev'd on other grounds, Tseng II*, 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999), and *Fishman v. Delta Air Lines*, 132 F.3d 138 (2d Cir.1998), elucidate the *Saks* holding. In Tseng I, the plaintiff asserted that an intrusive security search was an "accident" under Article 17, but the court disagreed, noting that the search was a "distasteful but a routine procedure of international air travel," 122 F.3d at 103, and concluding that the plaintiff's subjective reaction to the search was insufficient to transform the search into an accident:

> "[A]ccident" does not include the normal operation of the aircraft or the procedures followed by airline personnel in the normal course of air travel, even though they may cause illness in a passenger. As the Supreme Court stated in *Saks*, "When the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident."

*Id.* (*quoting Saks*, 470 U.S. at 406, 105 S.Ct. 1338).

In contrast to *Saks* and *Tseng I*, the event in *Fishman* was found to meet the *Saks* requisites for an Article 17 "accident." The child passenger in *Fishman* developed an earache, and when a stewardess applied a scalding compress to alleviate the ailment, the child was burnt. The *Fishman* court explained that under *Saks*, a viable Article 17 claim requires only that the passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger. It is only required that there be "some

link" in the chain of causation between the injury and the unexpected event. 132 F.3d at 141 (*citing Saks*, 470 U.S. at 405–406, 105 S.Ct. 1338) (quotation omitted). Applying this test, the court concluded that the scalding (and not the earache) was an unexpected event external to the passenger and thus qualified as an "accident" under Article 17.

▇ Scala's case is logically indistinguishable from the scalding of the child in *Fishman*, and is readily distinguishable from both *Saks* and *Tseng I*, which involved the wholly normal operation of the aircraft and airport. Unlike the routine and normal airline operations in *Saks* and *Tseng I*, the mistaken substitution during the in-flight beverage service of an alcoholic beverage for the non-alcoholic beverage Scala had ordered was an "unexpected" and perhaps even "unusual" event, as Scala expected to receive the beverage he ordered and it is presumably not common for the airline to mistakenly provide alcoholic beverages to those who do not desire them. *See, e.g., Gonzalez v. TACA Int'l Airlines*, No. Civ. A. No. 91–0175, 1992 WL 142399 at *2 (E.D.La. June 18, 1992) (spilling a tray of food onto passenger and serving passenger beverage containing a small piece of plastic were "accidents"); *Diaz Lugo v. American Airlines, Inc.*, 686 F.Supp. 373, 374–375 (D.P.R.1988) (spilling of coffee onto passengers lap was accident: "When a person boards a plane, he does not expect that a cup of coffee will spill over his lap. The usual operation of an airplane does not require passengers to be spilled with hot coffee.").

The substitution of an alcoholic beverage for the non-alcoholic beverage Scala ordered was also "external" to Scala in the

available evidence, including the postflight reports, pilot's affidavit, and passenger testimony, indicated that the aircraft's pressurization

system had operated in the usual manner." *Id.* at 394–395, 105 S.Ct. 1338.

sense that it was a mix-up presumably done by the flight attendant. While Scala's physical reaction to the event was obviously wholly internal, the accident was the drink substitution, not the heart ailment. *See, e.g., Fulop v. Malev Hungarian Airlines*, 175 F.Supp.2d 651 (S.D.N.Y. 2001) ("accident" was failure of flight crew to heed passenger's request to divert New York-bound plane to London when passenger began to experience chest pain; the subsequent heart attack was the result of the accident); *Husain v. Olympic Airways*, 116 F.Supp.2d 1121 (N.D.Cal.2000) ("accident" was refusal of flight attendant to move asthmatic passenger to a seat farther from the smoking section; passenger's subsequent death was the result of the accident).

American also contends that in order to qualify as an "accident," the event in question must "arise out of a risk that is 'peculiar to air travel.'" Def's Mem. Supp. [Doc. # 16] at 10 (*quoting Rullman v. Pan American World Airways, Inc.*, 122 Misc.2d 445, 471 N.Y.S.2d 478, 480 (N.Y.Sup.Ct.1983)). While this argument would at first blush seem to be foreclosed by the plain language of *Saks* (which formulated a definition of "accident" without including this added requirement), the Second Circuit has noted that the question of "whether an event's relationship to the operation of an aircraft is relevant to whether the event is an 'accident'" is an open one in this Circuit. *Wallace v. Korean Air*, 214 F.3d 293, 299 (2d Cir.2000) (quotations and citations omitted); *see also King*, 284 F.3d at 361 n. 5 (noting that this is still an open issue in the Second Circuit). *But see Wallace*, 214 F.3d at 300 (Pooler, J., concurring) ("Imposing an 'inherent in

air travel requirement does not comport with the plain meaning of [*Saks*].'"). The *Wallace* court did not resolve the question because it found that under the facts of the case, the event qualified as an accident "even under the narrower characteristic risk of air travel approach." 214 F.3d at 299. The case concerned a sexual assault by a co-passenger, and the court determined that the confines characteristic of long distance air travel "increased [plaintiff's] vulnerability to [the assailant's] assault":

> When Ms. Wallace took her seat in economy class on the KAL flight, she was cramped into a confined space beside two men she did not know, one of whom turned out to be a sexual predator. The lights were turned down and the sexual predator was left unsupervised in the dark. It was then that the attack occurred. * * * While Ms. Wallace lay sleeping, Mr. Park: (1) unbuckled her belt; (2) unbuttoned her shorts; (3) unzipped her shorts; and (4) squeezed his hands into her underpants. These could not have been five-second procedures even for the nimblest of fingers. Nor could they have been entirely inconspicuous. Yet it is undisputed that for the entire duration of Mr. Park's attack not a single flight attendant noticed a problem. And it is not without significance that when Ms. Wallace woke up, she could not get away immediately, but had to endure another of Mr. Park's advances before clambering out to the aisle.

*Id.* at 299–300. *But see id.* at 300 n. 1 (Pooler, J., concurring).[3]

---

**3.** "[O]ne might argue that being strapped into one's seat next to a stranger is not so much a characteristic of air travel as it is a characteristic of any form of public transportation. If we adopt, even provisionally, the [risk of air travel] approach, an even more 'Talmudic' question arises that the one the majority avoids: how associated with air travel need a hazard be before it can fairly be described as 'characteristic'?"

As in *Wallace*, the Court need not determine whether the event in question must be a "characteristic risk of air travel" in order for recovery to be had under Article 17, because the event in question in this case satisfies the *Wallace* test for being such a characteristic risk of air travel in that "the characteristics of air travel increased [Scala's] vulnerability" to a mistaken drink substitution. *Id.* at 299. Passengers on airplane flights are not free to move about the cabin to prepare their own drinks; instead, they must rely on the flight attendant to accurately take their beverage order and prepare the appropriate drink. Depending on the location of their seat, passengers may or may not be able to watch the attendant prepare the beverage, but in any event no passenger would expect to have to supervise preparation of his or her requested beverage. While a mistaken drink substitution could easily have occurred in other contexts, such as a restaurant, the same is true of the sexual assault in *Wallace:* it was by no means a risk exclusive to air travel or a risk inherent in air travel. Thus, the Court concludes that even if the more restrictive "characteristic risk of air travel" requirement is the law of this Circuit, the event which happened to Scala qualifies as an accident.

## IV. Conclusion

For the reasons set out above, defendant's motion for judgment on the pleadings [Doc. # 16] is DENIED.

IT IS SO ORDERED.