284 F.3d 352
 George KING and Judy King, Plaintiffs-Appellants,
v.
AMERICAN AIRLINES, INC., Flagship Airlines, Inc., AMR Corporation, AMR Eagle Holding Corporation and American Eagle Airlines, Inc., Defendants-Appellees.
 Docket No. 01-7611.
 United States Court of Appeals, Second Circuit.
 Argued January 7, 2002.
 Decided March 22, 2002.
 
 COPYRIGHT MATERIAL OMITTED Robert N. Isseks, Middletown, New York, for plaintiffs-appellants.
 David S. Rutherford, Renzulli & Rutherford, LLP, New York, New York, for defendants-Appellees.
 Before JACOBS, F.I. PARKER, and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Plaintiffs-appellants George and Judy King appeal from a judgment of the United States District Court for the Northern District of New York (Hurd, J.), dismissing their discrimination claim as untimely. The Kings, an African American couple possessing confirmed tickets for a flight from Miami to the Grand Bahamas, alleged that defendants bumped them from an overbooked flight because of their race. The defendants moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings, asserting that the Kings' claim fell within the scope of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929 ("the Warsaw Convention" or "Convention"), 49 Stat. 3000 (1934), 137 L.N.T.S. 11, reprinted in 49 U.S.C. § 40105 note, and thus was untimely under the Convention's two-year statute of limitations. The plaintiffs countered that the three-year statute of limitations applicable to 42 U.S.C. § 1981 actions governed their suit. The district court held that the Kings' discriminatory bumping claim was preempted by Article 19 of the Warsaw Convention, and granted the defendants' motion.
 
 
 2
 We hold that discrimination claims that arise in the course of embarking on an aircraft are preempted by Article 17 of the Warsaw Convention. We therefore affirm the judgment of the district court.
 
 BACKGROUND
 
 3
 Construing the facts in the light most favorable to the nonmoving party, as we must on this motion for judgment on the pleadings, we accept the following allegations as true. On April 25, 1997, the Kings purchased two round-trip tickets for a flight from New York City to Freeport, Grand Bahamas. The plaintiffs contracted with the defendants for transportation on American Airlines Flight 1819, departing from John F. Kennedy International Airport on July 26, 1997. The flight was scheduled to arrive at Miami International Airport at 3:08 p.m., at which time the plaintiffs were to transfer to American Airlines Flight 5777, operated by Flagship Airlines. Flight 5777 was scheduled to leave for Freeport at 4:10 p.m. that same afternoon.
 
 
 4
 The plaintiffs traveled to Miami as planned, but were informed upon arrival that their flight to Freeport was overbooked. The Kings refused an offer of monetary compensation to give up their seats. Nonetheless, after the Kings had been permitted to board the vehicle that was to transport the passengers from the terminal to the aircraft, agents of the defendants confiscated their boarding passes and informed the Kings that they were being "bumped" from the flight involuntarily. The Kings were the only African Americans with confirmed reservations who had not relinquished their seats voluntarily. Moreover, all the white passengers, including those who did not have confirmed reservations, were allowed to board Flight 5777.
 
 
 5
 The Kings commenced the present action on July 24, 2000, alleging that they had been racially discriminated against in violation of 42 U.S.C. § 1981, the Federal Aviation Act ("FAA"), 49 U.S.C. § 41310(a), and various other state and federal laws. The district court concluded that the Kings' suit, grounded upon an act of discriminatory bumping, fell within the scope of Article 19 of the Warsaw Convention. King v. Am. Airlines, Inc., 146 F.Supp.2d 159, 162-63 (N.D.N.Y.2001). As the Kings had not brought this action within the Convention's limitations period, the court dismissed the claim. Id.
 
 DISCUSSION
 I. Standard of Review
 
 6
 We review a judgment on the pleadings de novo. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.1999). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Id.
 
 II. The Relevant Statute of Limitations
 
 7
 In determining the timeliness of a section 1981 claim, federal courts generally apply the forum state's statute of limitations rules for personal injury claims. Goodman v. Lukens Steel Co., 482 U.S. 656, 660-61, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); see also Arneil v. Ramsey, 550 F.2d 774, 779 (2d Cir.1977) (holding that federal courts apply the law of the forum state, including the forum's borrowing rules, to determine the applicable statute of limitations when the federal statute does not contain a limitations period). The Kings filed this action just under three years after the alleged discriminatory bumping. Thus, they would normally be able to maintain their section 1981 claim regardless of whether New York's three-year statute of limitations, see Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir.1993), or Florida's four-year statute of limitations, see Baker v. Gulf & Western Indus., Inc., 850 F.2d 1480, 1482 (11th Cir.1988), governed this action.
 
 
 8
 Because of the Warsaw Convention's preemptive effect, however, the Kings' suit must be brought in accordance with the Convention's terms if their claims fall within the scope of the Convention. The Warsaw Convention imposes a two-year statute of limitations.[1] The Kings do not dispute that, should the Warsaw Convention's statute of limitations apply, their suit would be untimely. Thus, the sole question confronting us is whether the Kings' action is preempted by the Warsaw Convention.
 
 
 9
 III. Preemption Under Article 17 of the Warsaw Convention
 
 
 10
 The Warsaw Convention was crafted during the Second International Conference on Private Aeronautical Law of 1929 in order to foster the growth of the nascent commercial airline industry. Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 546, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). "The cardinal purpose of the Warsaw Convention ... is to achieve uniformity of rules governing claims arising from international air transportation." El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 169, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (internal quotation and citations omitted); see also Shah v. Pan Am. World Servs., Inc., 148 F.3d 84, 98 (2d Cir.1998) (describing the problems facing air carriers when they are subjected to a multiplicity of municipal laws and are unable to predict in advance what law will govern in the event of an accident). To this end, the Warsaw Convention created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the "international transportation of persons, baggage, or goods performed by aircraft." Warsaw Convention, Art. 1; see also Tseng, 525 U.S. at 169-70, 119 S.Ct. 662. This remedial system is designed to protect air carriers against catastrophic, crippling liability by establishing monetary caps on awards and restricting the types of claims that may be brought against carriers, while accommodating the interests of injured passengers by creating a presumption of liability against the carrier when a claim satisfies the substantive requirements of the Convention. Tseng, 525 U.S. at 169-70, 119 S.Ct. 662; Wallace v. Korean Air, 214 F.3d 293, 296 (2d Cir.2000); see also Sidhu v. British Airways plc, [1997] 1 All E.R. 193, 204 (U.K.H.L.).
 
 
 11
 Uniformity requires, however, that passengers be denied access to the profusion of remedies that may exist under the laws of a particular country, so that they must bring their claims under the terms of the Convention or not at all. Tseng, 525 U.S. at 161, 175-76, 119 S.Ct. 662. Recognizing this, the Supreme Court in Tseng held that the Convention's preemptive effect on local law extends to all causes of action for injuries to persons or baggage suffered in the course of international airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention. Id. at 174-76, 119 S.Ct. 662.
 
 
 12
 In reaching this decision, the Tseng Court relied heavily upon a recent amendment to Article 24 of the Convention, which addresses the preemptive effect of the treaty. The original version of Article 24 provided that:
 
 
 13
 (1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.
 
 
 14
 (2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.
 
 
 15
 49 U.S.C.A. § 40105 note. The language of Article 24 was altered in several respects by Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air ("Montreal Protocol"), which became effective in the United States in March of 1999. See 144 Cong. Rec. S11059-02 (Sept. 28, 1998). The most significant change was the elimination of the confusing "cases covered by"[2] phrase and the substitution of more inclusive language:
 
 
 16
 In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention ....
 
 
 17
 S. Exec. Rep. No. 105-20, at 29 (1998) (emphasis added). The ratification of the Montreal Protocol post-dated the events giving rise to the action in Tseng. The United States, however, argued before the Tseng Court as amicus curiae that the Montreal Protocol was an amendment of clarification, and did not modify the Convention's terms. The Supreme Court accepted this contention, holding that the language of the amended Article 24 embodied the intent of the drafters of the Convention, and so could be used to interpret the original Article 24.[3] Tseng, 525 U.S. at 174-75, 119 S.Ct. 662.
 
 
 18
 The Kings' discrimination claim is preempted by the Warsaw Convention if the events giving rise to the claim occurred in the course of the international "carriage of passengers and baggage," regardless of whether the original or the amended Article 24 controls. Yet we do not interpret Article 24 in isolation. In determining whether a claim is preempted because it falls within what the Supreme Court has termed the "substantive scope" of the treaty, we are directed to look to the Convention's liability provisions. Tseng, 525 U.S. at 171-72, 119 S.Ct. 662; Donkor v. British Airways Corp., 62 F.Supp.2d 963, 968 (E.D.N.Y.1999). These articles describe in further detail when an activity is part of the carriage of passengers and baggage. Articles 17, 18 and 19 of the treaty provide:
 
 
 19
 Article 17: The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
 
 
 20
 Article 18: (1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
 
 
 21
 (2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.
 
 
 22
 (3) The period of the transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the transportation by air.
 
 
 23
 Article 19: The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods.
 
 
 24
 49 U.S.C. § 40105 note.
 
 
 25
 The district court held that the Kings' claim fell within the scope of the Convention because "bumping" is a delay in international travel within the meaning of Article 19. King, 146 F.Supp.2d at 162. We do not reach that issue, however, because we hold that the events in question occurred in the course of embarkation, and that the Kings' action therefore falls within the substantive scope of Article 17.[4] See Albert v. Loksen, 239 F.3d 256, 265 (2d Cir.2001) ("We may, of course, affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely.") (internal quotation marks and citation omitted).
 
 
 26
 Article 17's "substantive scope" extends to all "passenger injuries occurring `on board the aircraft or in the course of any of the operations of embarking and disembarking'" — even if the claim is not actionable under the treaty. Tseng, 525 U.S. at 172, 119 S.Ct. 662 (quoting Article 17). Although by its terms Article 17 limits recovery to passengers who have sustained "bodily injury," the Supreme Court in Tseng made clear that this restriction on liability affects neither the analysis of the substantive scope of the provision nor its preemptive effect. Id. at 161, 119 S.Ct. 662 (holding that Article 17 preempts any action for passenger injury suffered on board an aircraft or while embarking or disembarking, regardless of whether bodily injury has been alleged). The plaintiff in Tseng had brought suit for psychological injuries suffered as a result of an intrusive security search by El Al Israel during the embarkation process. Although Tseng had no cause of action under the Convention, she was prohibited from circumventing its restrictions by bringing a suit under local law. Id. Similarly, although the Kings would not be able to maintain an action under Article 17 for non-bodily injuries stemming from the discriminatory bumping, their claim is preempted if it arose from events that took place during embarkation.
 
 
 27
 This Court has adopted a flexible approach for determining whether a passenger is "in the course of any of the operations of embarking" when the injury allegedly occurred. We consider four factors: "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; (4) the physical proximity of the passengers to the gate." Buonocore v. Trans World Airlines, Inc., 900 F.2d 8, 10 (2d Cir.1990). Applying this test, courts have previously held that passengers who had not yet left the terminal were nonetheless engaged in an operation of embarkation when they had gathered at the departure gate in order to board the bus that would take them to the plane. Evangelinos v. Trans World Airlines, Inc., 550 F.2d 152, 164 (3d Cir.1977) (en banc) (holding that plaintiffs were injured in the course of embarkation when the passengers had completed all prerequisites to boarding except for the final security search at the gate, were congregated at the gate at the direction of airline personnel, and were awaiting the bus to transport them to the plane); Day v. Trans World Airlines, Inc., 528 F.2d 31, 33-34 (2d Cir.1975) (holding that passengers fell within the scope of Article 17 when they had surrendered tickets, passed through passport control, entered an area reserved exclusively for departing passengers, and assembled at the departure gate in readiness for departure).
 
 
 28
 At the time they were bumped from their flight, the Kings had already checked in for their flight, received their boarding passes, and boarded the vehicle that was to transport them from the terminal to the aircraft. In other words, not only were they "actively engaged in preparations to board the plane," Buonocore, 900 F.2d at 10, but they had progressed further in those preparations than had the plaintiffs in Day and Evangelinos. See Ricotta v. Iberia Lineas Aereas De Espana, 482 F.Supp. 497, 500 (E.D.N.Y.1979) (ruling that a passenger injured in a bus transporting passengers from aircraft to terminal was injured in the course of disembarking an aircraft), aff'd, 633 F.2d 206 (2d Cir.1980); see also Barratt v. Trinidad & Tobago (BWIA Int'l) Airways Corp., No. CV 88-3945, 1990 WL 127590, at *3 (E.D.N.Y. Aug. 28, 1990) (comparing plaintiff injured while descending a stairway to the tarmac with the Day passengers, wounded before they had even proceeded through the gate, in determining that the action was preempted by Article 17). The Kings therefore suffered their injury while "in the course of [one of] the operations of embarking" within the meaning of Article 17.
 
 
 29
 Plaintiffs do not contest that they were in the process of embarking the plane at the time the defendants allegedly committed the discriminatory act. Rather, they contend that their claim is not preempted by Article 17 because that provision covers only "accidents," as opposed to intentional conduct. As a preliminary matter, the term "accident" does not bear the limited construction plaintiffs propose. The Supreme Court has defined "accident" in this context as "an unexpected or unusual event or happening that is external to the passenger." Air France v. Saks, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). Intentional torts may, in some instances, constitute accidents actionable under the Convention. See, e.g., Wallace, 214 F.3d at 299-300 (holding that sexual assault is an "accident" within the meaning of Article 17). We need not decide today whether racial discrimination would fall within the definition of accident, however, because Tseng instructs that a claim for an injury to a passenger is preempted by Article 17 as long as the harm was sustained "in the course of any of the operations of embarking" on an aircraft. As we have determined that it was, this action must be brought under the terms of the Warsaw Convention or not at all.
 
 
 30
 IV. Discrimination Actions Under the Warsaw Convention
 
 
 31
 The Kings resist this conclusion. They would have us distinguish between civil rights claims and actions sounding in tort, and hold that the latter fall within the ambit of the Warsaw Convention while the former do not. In support of their position, appellants cite to language from Tseng that sets forth the outer boundaries of the Convention's coverage: "[T]he Convention's preemptive effect on local law extends no further than the Convention's own substantive scope." 525 U.S. at 172, 119 S.Ct. 662 (quoting Brief for United States as Amicus Curiae in El Al Israel Airlines v. Tseng, 1998 WL 401592, at *16 ("U.S. Amicus Brief")) (alteration in original). Discrimination, plaintiffs claim, is not within the "substantive scope" of the Convention.
 
 
 32
 Plaintiffs apparently agree that we should engage in an assessment of how closely linked the event giving rise to the cause of action was to the international "carriage of passengers and baggage." They eschew, however, any location or time-specific approach to this inquiry. They suggest instead that we evaluate whether the injury suffered is somehow unique or specific to airline travel. Under this analysis, because the Kings' injuries do not depend on whether the discrimination occurred on board the aircraft, on the tarmac, or at the ticket office, their suit would not fall within the scope of the Convention.
 
 
 33
 Plaintiffs misapprehend the nature of Article 17 and the Warsaw Convention, however. Article 17 directs us to consider when and where an event takes place in evaluating whether a claim for an injury to a passenger is preempted. Expanding upon the hypothetical posed by the Tseng Court, a passenger injured on an escalator at the entrance to the airport terminal would fall outside the scope of the Convention, while a passenger who suffers identical injuries on an escalator while embarking or disembarking a plane would be subject to the Convention's limitations. Tseng, 525 U.S. at 171, 119 S.Ct. 662. It is evident that these injuries are not qualitatively different simply because they have been suffered while embarking an aircraft, and yet Article 17 plainly distinguishes between these two situations.[5]
 
 
 34
 Were we to adopt the Kings' interpretation, we would eviscerate the uniformity that is the animating purpose behind the Convention, as claimants would be able to make similar arguments about any type of injury that can be sustained on board an aircraft. The Tseng Court's reference to the "substantive scope" of the Convention merely reinforces our conclusion, because the Court analyzed the limits of Article 17 in precisely these spatial and temporal terms: "A carrier ... is indisputably subject to liability under local law for injuries arising outside of [the substantive scope of the Convention]: e.g., for passenger injuries occurring before any of the operations of embarking or disembarking." Id. at 172, 119 S.Ct. 662 (internal quotation marks omitted).[6]
 
 
 35
 The aim of the Warsaw Convention is to provide a single rule of carrier liability for all injuries suffered in the course of the international carriage of passengers and baggage. As Tseng makes clear, the scope of the Convention is not dependent on the legal theory pled nor on the nature of the harm suffered. See Tseng, 525 U.S. at 171, 119 S.Ct. 662 (rejecting a construction of the Convention that would look to the type of harm suffered, because it would "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty"); Cruz v. Am. Airlines, 193 F.3d 526, 531 (D.C.Cir.1999) (determining that fraud claim was preempted by Article 18, because the events that gave rise to the action were "so closely related to the loss of [plaintiffs'] luggage ... as to be, in a sense, indistinguishable from it").
 
 
 36
 Notably, every court that has addressed the issue of whether discrimination claims are preempted by the Warsaw Convention post-Tseng has reached a similar conclusion. See Waters v. Port Auth., 158 F.Supp.2d 415, 429 (D.N.J.2001) ("Although [the] cause of action is grounded in discrimination statutes, the thrust of his claim is one of personal injury. Undoubtedly, this falls within the scope of the Convention and the goal of providing a uniform scheme of liability."); Turturro v. Continental Airlines, 128 F.Supp.2d 170, 180-81 (S.D.N.Y.2001) (dismissing discrimination claim brought pursuant to the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705 et seq., insofar as it was founded on actions that took place on board the aircraft); Brandt v. Am. Airlines, No. C 98-2089, 2000 WL 288393, at *4 (N.D.Cal. Mar. 13, 2000) (holding that ACAA claim was preempted by Article 17 when the conduct complained of occurred on board the aircraft). Although plaintiffs cite to pre-Tseng jurisprudence in which it was determined that discriminatory bumping claims did not fall within the scope of the Convention, we find those cases inapposite. See Wolgel v. Mexicana Airlines, 821 F.2d 442, 444-45 (7th Cir.1987) (ruling that claim for discriminatory bumping is not preempted by Article 19 when trip was never completed, because the damages sought by plaintiffs did not stem from "delay" in air travel, but from the act of bumping); Mahaney v. Air France, 474 F.Supp. 532, 534-35 (S.D.N.Y.1979). In those cases, there was no allegation that the discriminatory bumping occurred during the course of embarkation. Thus, those courts did not address the question of whether discrimination actions could be preempted by Article 17. We do not reach the separate issue of whether, after Tseng, such discriminatory bumping claims would also fall within the substantive scope of Article 19.
 
 
 37
 Plaintiffs raise the specter that our decision will open the doors to blatant discrimination aboard international flights, invoking images of airline passengers segregated according to race and without legal recourse. They suggest that, despite Article 24's plain mandate that the Warsaw Convention preempts "any cause of action, however founded," we should nonetheless carve out an exception for civil rights actions as a matter of policy. This we decline to do. "[I]t is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties." Saks, 470 U.S. at 399, 105 S.Ct. 1338. It is not for the courts to rewrite the terms of a treaty between sovereign nations. Cf. Turturro, 128 F.Supp.2d at 181 ("[T]he Convention massively curtails damage awards for victims of horrible acts [of] terrorism; the fact that the Convention also abridges recovery for ... discrimination should not surprise anyone.").
 
 
 38
 Moreover, while private suits are an important vehicle for enforcing the anti-discrimination laws, they are hardly the only means of preventing discrimination on board aircraft. Federal law provides other remedies. Responsibility for oversight of the airline industry has been entrusted to the Secretary of Transportation. The Kings could, therefore, have filed a complaint with the Secretary. 49 U.S.C. § 46101. The FAA prohibits air carriers, including foreign air carriers, from subjecting a person to "unreasonable discrimination." Id. § 41310(a). The Secretary has the authority to address violations of FAA provisions, including the power to file civil actions to enforce federal law. Id. § 46106. It does not follow from the preemption of the Kings' private cause of action that air carriers will have free rein to discriminate against passengers during the course of an international flight.
 
 CONCLUSION
 
 39
 For the reasons set forth above, we affirm the district court's dismissal of the plaintiffs' complaint as untimely.
 
 
 
 Notes:
 
 
 [1]
 Article 29 of the Warsaw Convention provides that "[t]he right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped." 49 U.S.C. § 40105 note
 
 
 [2]
 This phrase may also be translated from the original French text as "in the cases anticipated by Article 17" or "the cases provided for by Article 17."Tseng, 525 U.S. at 167 n. 11, 119 S.Ct. 662.
 
 
 [3]
 Cf. Cortes v. Am. Airlines, Inc., 177 F.3d 1272, 1283 (11th Cir.1999) ("[C]oncerns about retroactive application are not implicated when an amendment that takes effect after the initiation of a lawsuit is deemed to clarify relevant law rather than effect a substantive change in the law.").
 
 
 [4]
 Both below and before this Court, the parties debated whether the Kings' aborted trip actually involved a "delay" in travel such that their claim would fall within the scope of Article 19. Because the Kings' claim is plainly preempted by Article 17, we decline to reach the Article 19 question on this motion for judgment on the pleadings, as it potentially implicates disputed issues of fact
 
 
 [5]
 We do not express any opinion as to whether damages may be recovered under Article 17 for "accidents" that are not uniquely characteristic of air travel, a question that we have previously reservedSee Wallace, 214 F.3d at 299. Our holding applies only to the preemptive scope of the Convention, which is often broader than the scope of the remedies the Convention provides.
 
 
 [6]
 Similarly, in a footnote to the passage from the U.SAmicus Brief quoted by the Tseng Court, the United States observed that Article 18's substantive scope "comprise[d] the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft," but did not extend to transportation by land, sea or river performed outside an airport. U.S. Amicus Brief at 16 n. 8.