United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20452

EDO GEORGE MBABA; PATIENCE MBABA

Plaintiffs - Appellants,

v.

SOCIETE AIR FRANCE, doing business as Air France,

Defendant - Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This case concerns the preemptive effect of the Warsaw Convention as amended by Montreal Protocol No. 4. The Appellant, Edo George Mbaba, argues that his claims stemming from excess baggage fees are not preempted because such injuries are not contemplated by the Convention. The Appellee, Societe Air France ("Air France"), argues that Mbaba's claims are preempted due to the Convention's broad exclusivity. As explained below, the Convention's text and Supreme Court precedent inform our conclusion that the claims are preempted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mbaba purchased a ticket to travel on Air France from Houston, Texas to Lagos, Nigeria. The trip was scheduled for June 15, 2002, and included a layover in Paris, France. Mbaba bought the ticket from Federal Express, his employer. The parties dispute whether Federal Express sold Mbaba a "non-revenue" (complimentary) ticket. When Mbaba checked in for the flight in Houston, he paid a $520.00 excess baggage fee, $130.00 for each of his four extra bags. His baggage ticket indicated that the bags were to be transported from Houston to Lagos.

In Paris, Air France unloaded Mbaba's baggage. Air France says that it had to do this because Mbaba was a non-revenue passenger. Meanwhile, Mbaba missed the scheduled flight to Lagos. Mbaba reclaimed the baggage and spent a night in the airport terminal waiting for the next flight. The next day, when Mbaba checked in for the new Lagos flight, an agent said Mbaba would have to pay $4048.66 for the extra bags. In Paris, Air France charges excess baggage fees based upon the weight of the bags. Mbaba alleges that the agent refused to let him send the bags back to Houston and said that if Mbaba did not pay the charge, the bags would be "taken out and burned." Mbaba payed the fee with a credit card.

Mbaba filed this suit against Air France in Texas state court, alleging breach of contract, violation of the Texas Deceptive Trade Practices Act, and common law fraud. Air France removed the case

2

to federal court.  After a period of discovery, the district court granted summary judgment to Air France, holding that the Warsaw Convention preempted Mbaba's state law claims.  Mbaba appealed.

## II.  STANDARD OF REVIEW

This Court reviews a district court's grant of a summary judgment *de novo*, applying the same standards as the district court.  *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996).  The evidence should be viewed in the light most favorable to the nonmoving party, and the record should not indicate a genuine issue as to any material fact.  *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 486 (5th Cir. 2004).

## III.  DISCUSSION

### A.  The Warsaw Convention

This case presents the first opportunity for this Court to interpret the language of the Warsaw Convention as amended by Montreal Protocol No. 4.  *See* Convention for the Unification of Certain Rules Relating to International Transportation By Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) (as amended by Montreal Protocol No. 4, *as reprinted in* S. Rep. No. 105-20, at 21-32 (1998)) ("Warsaw Convention").  The "cardinal purpose" of the Warsaw Convention is "to achieve uniformity of rules governing claims arising from international air transportation."  *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 169 (1999).

3

It applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Warsaw Convention, *as reprinted in* S. Rep. No. 105-20, at 21 (Article 1).

The language at issue is in Paragraph 1 of Article 24. It states:

> 1. In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

*Id.* at 29. The language in Paragraph 2 of Article 24 offers some guidance in interpreting Paragraph 1. It states:

> 2. In the carriage of cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and limits of liability set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. Such limits of liability constitute maximum limits and may not be exceeded whatever the circumstances which gave rise to the liability.

*Id.* at 29. This version became binding in the United States March 4, 1999, after adoption of Montreal Protocol No. 4. *Tseng*, 525 U.S. at 175 n.14. The previous version of Article 24 stated:

> 1. In the cases covered by articles 18 and 19 any actions for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention.
>
> 2. In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

4

Warsaw Convention, *as reprinted in* note following 49 U.S.C. § 40105, at 11 (2000). It is undisputed that the alleged damages suffered by Mbaba do not fall within the language of Articles 17, 18, or 19. Article 17 describes carrier liability for death or bodily injury. Warsaw Convention, *as reprinted in* S. Rep. No. 105-20, at 26. Article 18 describes carrier liability for damage to passenger baggage. *Id.* Article 19 describes carrier liability for damage caused by delay in transportation of "passengers, baggage, or goods." *Id.*

Montreal Protocol No. 4 deals primarily with rules relating to cargo transportation. *Id.* at 1. For example, it reduces paperwork that must accompany cargo and redefines cargo liability. *Id.* at 3-4. The protocol languished for more than twenty years in the Senate, because Senators objected to liability limits for personal injuries and death that would be triggered by its adoption. *Id.* at 2. In 1997, the Department of Transportation approved an inter-airline agreement that waived the Convention's limits, which led to the Senate's reconsideration of the protocol. *Id.*

B.  *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*

Neither the United States Supreme Court nor the Fifth Circuit has interpreted Article 24 of the Warsaw Convention since it was altered by Montreal Protocol No. 4. The Supreme Court, however, reviewed the prior version in *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155 (1999).

Tseng sought damages for psychic and psychosomatic injuries resulting from "an intrusive security search" before she boarded an El Al Israel Airlines flight. *Id.* at 160. The case presented a question of the Convention's exclusivity, given that the Convention did not address psychological injuries. *Id.* The Court found that the Convention barred Tseng's recovery, holding that recovery for a personal injury "not allowed under the Convention, is not available at all." *Id.* at 161.

The Court reasoned that recourse to local law would undermine the Convention's purpose—uniformity of air carrier liability. *Id.* at 161. It relied on language in Article 1 that made the Convention apply to "all international transportation" and Article 24, as written before adoption of Montreal Protocol No. 4. *Id.* at 162. The Court found that Article 24 was part of "a compromise between the interests of air carriers and their customers" that restricted the claims those customers could pursue. *Id.* at 170–71. It also explained that an interpretation allowing Tseng's claims would lead to "several anomalies," including cases where passengers injured physically would be subject to liability limits while passengers merely traumatized would not. *Id.* at 171. Finally, the Court concluded that other treaty signatories had interpreted the Convention as an exclusive remedy. *Id.* at 176.

The Court also addressed Montreal Protocol No. 4, which at the time of the decision had been ratified but had not taken effect.

6

*Id.* at 174. It stated that under the amended Article 24, both parties agreed that "[t]he treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *Id.* at 175. Indeed, Tseng "concede[d]" that under the protocol she would have "no recourse to an alternate remedy." *Id.* at 160-61. The Court said that the protocol "clarifies, but does not change, the Convention's exclusivity domain." *Id.* at 161. Justice Stevens, the only dissenting member of the Court, also assumed that the protocol clarified the exclusivity of the Convention. *Id.* at 177 (Stevens, J., dissenting) (describing his disagreement as having limited significance because "the issue has been conclusively determined for future cases by the recent amendment [Montreal Protocol No.4] to the Warsaw Convention").

C. Analysis

Mbaba argues that his claims cannot be preempted because his injuries are not contemplated by the Convention. He focuses on the fact that his injury is not even within the broad categories of the Convention: personal injury, lost or damaged baggage, or delay. He suggests that the district court's holding in effect means that "unless an injury is specified in the Warsaw Convention, there can be no remedy for it." *Id.* He makes this point with an analogy: "An airline could, if it chose, even line up passengers on an international flight and *rob them at gunpoint* without fear of any

7

civil liability to the victims whatsoever." Robbery is not prohibited by the Convention.

Mbaba supports his argument with the text of Article 24, specifically the language stating that claims "can only be brought subject to the conditions and limits set out in this Convention." He also relies on a portion of *Tseng* relating to a hypothetical involving an escalator. *Tseng*, 525 U.S. at 171–72. The hypothetical came from Tseng's Court of Appeals decision. The Second Circuit reasoned that if the Convention excluded Tseng's claims "then a passenger injured by a malfunctioning escalator in the airline's terminal would have no recourse against the airline, even if the airline recklessly disregarded its duty to keep the escalator in proper repair." *Id.* at 171. In response, the Supreme Court stated, "[T]he Convention's preemptive effect on local law extends no further than the Convention's own substantive scope. A carrier, therefore, is indisputably subject to liability under local law for injuries arising out of that scope: *e.g.*, for passenger injuries occurring before any of the operations of embarking or disembarking."[1] *Id.* at 172 (internal quotation marks

---

[1]Mbaba asks this Court to interpret "scope," as used in *Tseng*, as pertaining to the types of claims contemplated by the Convention. Such an interpretation, however, would directly contradict the ultimate holding in *Tseng*, which precluded claims for psychological injuries because the Convention did not include them. The Supreme Court appears to use the term "scope" to describe the specified parameters of the Convention. Indeed, Article 17 states that a carrier is liable for death or injuries that take place "onboard" or while "embarking or disembarking."

8

omitted).    Finally, Mbaba relies on statements made by Senator Biden that describe Montreal Protocol No. 4. as "simplify[ing] cargo rules" without making "controversial" changes.  *See* 144 Cong. Rec. S11059-02 (1998).

Mbaba's argument fails to overcome the text of the Convention and *Tseng*.  First, the text of Article 24 specifically preempts claims resulting from the carriage of baggage "however founded."[2] Second, the language in *Tseng* surrounding the escalator hypothetical does not overcome other passages of *Tseng* specifically related to Montreal Protocol No. 4.  *Tseng*, 525 U.S. at 175 (describing the amended Convention as "preclud[ing] passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty").  Third, Senator Biden's comments are unpersuasive as they speak only to the general characteristics of the protocol.  Finally, Mbaba's recitation of analogies is unhelpful.  Our task is to review the Convention in relation to a tariff on the carriage of baggage.  We will not consider other scenarios.

---

Warsaw Convention, *as reprinted in* S. Rep. No. 105-20, at 26; *see also Acevedo-Reinoso v. Iberia Líneas Aéreas de España S.A.*, 449 F.3d 7, 14 (1st Cir. 2006) (remanding for a determination of whether the alleged injury "occurred on board the airplane or in the process of embarking or disembarking").

[2]The amended version of Paragraph 1 uses the more broad language of "In the carriage of passengers and baggage" rather than the previously used "In the cases covered by articles 18 and 19." *Supra* Part III.A.

9

Our decision conforms with the view taken by the Second Circuit in *King v. American Airlines, Inc.*, 284 F.3d 352 (2d Cir. 2002). In *King*, the court held that the Warsaw Convention preempted a discrimination claim based on an allegation that the plaintiffs were bumped from a flight because of their race. *Id.* at 358. The *King* Court noted that the Supreme Court in *Tseng* "held that the Convention's preemptive effect on local law extends to all causes of action . . . regardless of whether a claim actually could be maintained under the provisions of the Convention." *Id.* at 357.

For these reasons, the Warsaw Convention preempts Mbaba's claims. To hold otherwise would undermine the Convention's goal of uniformity. *See Tseng*, 525 U.S. at 169 ("Given the Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations."). Because we affirm on this ground, we do not reach Air France's alternative arguments.

## IV.  CONCLUSION

Based on the text of the Warsaw Convention and the language in *Tseng*, we hold that Mbaba's claims are preempted. Accordingly, his injuries are not actionable in the courts of the United States. We affirm the district court's grant of summary judgment.

10